I would call it housekeeping, which is that there's two reply briefs in the Roshan v. Lawrence case that were submitted oversized, and no ruling was ever made whether to accept or not. It was transferred over to this court, this mayor panel for decision, and the oversized reply brief for which permission was denied last Wednesday, and a conforming brief was submitted Friday morning. And the question I simply have is, has the court had an opportunity to look at those briefs? Yes, we have received those, and we know there are a number of pending motions in some of these cases, and those will be ruled on in due course. Right, but the only question is, you have, you're familiar with the contents of these matters, so I don't need to spend any time on the assumption that you need to be very familiar. No, we have received them. Okay, and read them. Okay. So therefore, I would, may it please the court, this is a set of four related appeals, all of which were dismissed on grounds of younger abstention. The specific controlling case that was cited by every one of the courts was the Hirsch case. However, Hirsch has long been superseded both on the California Supreme Court side in terms of the underlying conceptual underpinnings for the application of younger abstention, and on the mechanism by which younger abstention is actually applied, which is the Sprint Communications case. Sprint Communications ends up imposing a set of categorical mandates known as the NOPSI categories. Previously, under the interpretation of this court and most of the courts, any proceeding of any kind that had any kind of judicial or administrative effects or characteristics would be interpreted as potentially coming under younger. That was abolished by the United States. The issue here is that when you end up understanding what the actual NOPSI categories are, these kind of state bar proceedings in California do not meet the standards. In addition, the underlying matters, both for the specifics of this case, involve ongoing corruption, from our point of view, and certainly a history of corruption, regarding Tom Girardi. And the state bar is obliged to disclose information regarding Girardi's corruption because of the possibilities of direct bias or compensatory bias, as understood under the Bracey and Gaccio cases. Now, the state bar's position and the position of the underlying courts was simply to apply the Hirsch case, ignore and not even mention the Bracey matters, and essentially also, once we ended up, I was able to develop the specific requests regarding the Secretary Brady obligations under Business and Professionals Code Section 6085, reveal the fact that both the state bar and the California Supreme Court do not recognize the statutory protections that this court has looked at to decide that, in fact, Ninth Circuit authority should protect the California state bar proceedings under Younger abstention. Now, I was very interested, Judge Seiler, to see your presence on this case, because you've actually written an opinion on this matter that's highly relevant to the arguments that were made, that were particularly developed in the San Ivey Lawrence case. And that case was the, if you will recall, is the Doe versus University of Kentucky case. And if you remember, that was a Younger abstention case. And you took the position that in order for it to fit into the NOPCI categories, the underlying administrative proceedings had to fit, at least within some semblance of criminal proceedings, because of the idea that these kind of proceedings that we're talking about, if they fit into any NOPCI category at all, the NOPCI category that they would fit into is the category of civil enforcement proceedings. We take the position that to be qualified as civil enforcement proceedings, under NOPCI, you have to, the underlying proceedings have to be judicial in character, which is explicitly articulated in NOPCI, and also have to have basic characteristics of civil litigation. California state bar proceedings have none of these characteristics. In the 2000 decision that Inouye rose, the California Supreme Court was trying to explain to the world why it was not going to allow any oral argument for state bar proceedings that had been initiated through a petition for review after a recommendation for discipline had been made by the California state bar. And the position that was taken by the California Supreme Court was to make clear that California's proceedings for the California state bar have no judicial qualities because they are quasi-judicial in nature. That comes from the fact that the California Constitution bars the California Bar Association or any other entity not mentioned and granted specific judicial powers from exercising judicial power under the California Constitution. Because of that bar, the California Supreme Court repeatedly explains that state bar matters are quasi-judicial. In NOPCI, the United States Supreme Court explicitly addressed the question of what happens if you have administrative proceedings that are not judicial in character. And they said those proceedings and any subsequent judicial review of them are not covered by In addition, the basic characteristics of a civil enforcement proceeding... Mr. Sinai, don't you think the cases that we do have from this court and from the California Supreme Court differ with the way you describe the essential characteristics of a state bar Rosenthal v. California Justices and Hirsch, 1990-1995. The characteristics and description of how these things operated is the 2000 decision of Inouye Rose. And before Inouye Rose, the California Supreme Court had never really articulated how it treats state bar court after the reformation of the California state bar. Are you saying that Hirsch is superseded? Absolutely it's superseded. It's superseded on two bases. It's superseded because at the time under the Sprint case, you now have to fit into the NOPCI categories. Not a single one of the decisions that dismissed matters under Younger abstention discussed whether or not they fit into the NOPCI categories. Why? Because they had Hirsch. Hirsch is on point. And therefore, from the district court's point of view, that ended the discussion as far as whether they fundamentally fit within those categories. In addition, Inouye Rose takes a radically different view of how these matters should be considered when you actually take a good close reading of what they're saying. Because what in Hirsch the Supreme Court makes clear is first of all, when they take a recommendation from the state bar association, they look it over. But even if you demonstrate irrefutable violation of constitutional rights, as long as they think that the result is the result that they're happy with, they don't care. They're not going to grant a petition for review. And they have never granted a petition for review on the merits and provided any relief for any attorney in the decades following. And that's because they take the position that essentially I would say it's a despotic position that they look at the facts and they say, does this guy deserve to be punished? We think so. What relief are you seeking in this case? The specific relief depends on the cases we're talking about. One of the cases is extremely bizarre at first glance because it was my direct lawsuit against the California Supreme Court justices just that was filed once they had, after I took the petition for review, and once I had, but before they had ruled. They chose to default rather than contest the matter. I presume because they assumed, given the history of Ninth Circuit law and the Ninth Circuit procedure in this matter, that I was going to lose anyway, and their prediction was correct. The trial court judge, Martinez-Olguin, in that particular case, ended up ruling against me and rejected all of the allegations we provided regarding both potential bias at the Supreme Court level and the Girardi bias. Are you seeking money damages or reinstatement? In my case, we're only requesting equitable relief. The only request we do in this case is injunctive relief in respect to me to reverse the California Supreme Court decision suspending me because they defaulted. In the other matters, we want to be able to go ahead and make the case that the proceedings, the underlying proceedings, should be enjoined. Now, specifically, one of the cases, in my case, they initiated a second set of State Bar proceedings, which are ongoing, and that's the Santa Yvie-Cardona case. In the Santa Yvie-Cardona case, the specific issue is the fact that I made requests under the statutory Brady requirements regarding the Girardi matters, and they refused to recognize the existence of the statutory right that had been imposed by the California legislature, and it is clear from Inouye Rose that the California Supreme Court rejects it as well because the statutory Brady rights were imposed by the legislator in 6085B in 1995. By 2000, the court is taking the position that there is no criminal protections whatsoever, even though five years before, undisputed from the legislative history, such protections had been imposed. What is the connection between your cases and the Girardi matters? The Girardi matters come through the doctrine of Bracey, compensatory bias. Compensatory bias is the theory that when a tribunal of any kind is corrupted, as the Girardi case clearly was, that the functions of it will be tilted against other people in order for them to show how tough they are and to eliminate criticism of their lack of prosecution. And in particular, there was a direct connection in the Girardi cases between me and what was going on because simultaneously, as I'm sure you hopefully understand, my bar case was instigated by Alex Kaczynski and the Judicial Council over my exposure of Kaczynski's pornography server and my filing of a complaint about it to the Judicial Council. That's what prompted my bar complaint, and that's demonstrated in the record that it was Kathy Canterson who essentially bludgeoned them into filing the ultimate bar complaint. And I managed to eliminate all but one of the charges, but the last charge I could not get rid of. And that was because I was not allowed by the second bar court judge to have any relief on that matter. Simultaneously, they are putting away the matter that you, Judge Taschema, had actually adjudicated, which was the In re Girardi matter. If you recall Walter Lack and Girardi, you ended up finding should be sanctioned. They cleared Lack and Girardi improperly, which they acknowledge, though nobody has ever really understood how it occurred. And my theory, among others, is that the instigation of those bar complaints against me, most of which failed and were proved to be non-meritorious, were a quid pro quo and to show the Ninth Circuit that, well, they weren't going to go after Girardi. They weren't going to go after Walter Lack, but we will go after the Santa guy who's really angered you because of his public disclosure of the porn server. So that's the theory. And under any circumstances, the Bracey case and the underlying cases show that even disconnected cases, factually, can end up being affected by the decision of a tribunal, which is corrupted, to try and appear tough in one circumstance to alleviate criticism of their failures to prosecute or failures to enforce the law on other ones, which is what actually happened in the underlying Bracey matters. Do you want to save some time for rebuttal? I would like to do so, unless you have any specific questions. No. Thank you. May it please the Court. I'm Rita Himes, Assistant General Counsel for the State Bar of California, and I am appearing for defendant's appellees in Roshan v. Lawrence, Sinai v. Lawrence, and Sinai v. Cardona. All three of these appeals are easily resolved under controlling Supreme Court and Ninth Circuit law. Middlesex clearly holds that attorney disciplinary proceedings that are not materially different from the proceedings in California are subject to younger abstention, and Sprint reaffirmed that holding, specifically citing Middlesex as good authority. There is no material difference in this proceeding. They begin with an administrative arm of the Supreme Court, as in New Jersey, and the discipline is imposed by the Supreme Court. Hirsch specifically holds that State Bar of California attorney disciplinary proceedings are subject to younger, and there is no material difference in the current proceedings and those that were at issue in Hirsch. All of Plaintiff's arguments are generic. They apply to all attorneys, if accepted, and would result in the wholesale transfer of attorney disciplinary cases to federal court. And fundamentally, they are premised on a distrust of the California Supreme Court justices and the appointed State Bar Court judges. Under Hirsch, this court must presume the honesty and integrity of the state judiciary. The district court had to dismiss under Middlesex and Hirsch, and this court must affirm. As to Girardi, the only connection between the Girardi controversy and the cases before the court is that these appellants are not Girardi. Mr. Sanai just argued that the connection between his case and Girardi is that they occurred at about the same time. Bracey is an entirely different case. In that case, you had a corrupt judge who took specific measures in the defendant's case that undermined his defense, and it was inferrable that it was related to proven corruption by that judge. I welcome the court's questions. It does not appear there are any missed times, so unless you have anything further, we'll thank you for your argument this morning. Thank you. The fundamental position of the State Bar is that there is no difference between the Middlesex proceedings and the proceedings that the California State Bar does. In fact, they're entirely different. In the first place, in Middlesex, as made clear within the Middlesex decision and the Captain New Jersey Supreme Court decisions, the proceedings are judicial from start to finish. They operate on a system similar to Hawaii does, where there are direct special masters hired in committees that work directly for the court, and the proceeding is a seamless process going from direct litigation with the prosecutorial authority, then recommendation, and finally review by the New Jersey Supreme Court. When the New Jersey Supreme Court was asked to characterize what its proceedings were like, they said they're civil in character. California Supreme Court takes the exact opposite. They say they're not civil, they're not criminal, you have no criminal rights, we ignore the specifics of the statutory rights that have been imposed by the legislature. It doesn't resemble, when you actually look at it closely, anything regarding civil or criminal law or any kind of procedures that were recognized as common to due process in any way. In addition, specifically to the California Supreme Court, you are prohibited from making certain kinds of constitutional arguments to them. You cannot make constitutional arguments either regarding the state bar court judges or themselves, which are based on their rulings or their statements in court. And California does not allow you to obtain disqualification of California justices at the appellate level or at the state Supreme Court level, a fact, by the way, acknowledged in Hirsch. These, the fact that you cannot even make certain classes of constitutional arguments in and of themselves disqualifies these from younger, because one of the middle sex factors is that you're entitled to make all constitutional arguments. In addition, there's a temporal bar. The temporal bar, which is unique in the law, is that if you discover a month after discipline has been imposed that one of the witnesses were bribed or that there were constitutional problems, there is no mechanism for you to be able to seek relief from the California Supreme Court. They, I ended up actually filing and requesting such relief after there was a problem, there was a problem for me to be able to satisfy one of the conditions to lift my suspension, and I received a letter back from the clerk of the California Supreme Court saying, once the matter is final, there is no procedural mechanism in able to adjust it. Essentially, the system has none of the basic due process protections that are, or even procedural. But listen, I think you're speaking of what was characterized as a motion to reconsideration, a decision on reconsideration, right? Isn't that what it amounted to? What it was was a second motion for reconsideration. Right. So you want to reconsider something that's already been reconsidered. There's got to be an end to everything, and we have the same rules in our court. Every court has the same rules. No. If, for example, there is a criminal matter, you discover that there was corruption within the body or certain constitutional obligations were not fulfilled, such as handing over documents that required to be documented, or there was fraud on the court, you go back and you go back and then take standard Rule 60 or independent action in equity in California that allows you to go in and seek rectification for these matters, which you had no ability to know about. That's completely impossible. I don't think Rule 60 applies to criminal cases, but let me finish. But the remedy there is obviously habeas, which is in the Constitution. But it's an entirely different animal. Go ahead. It's an entirely different animal, but there is a mechanism to essentially obtain post-judgment relief regarding subsequent matters that you discover, or, for example, if you have an injunction or a particular sentence or obligation that you can no longer satisfy in federal law, you can go ahead and say, please modify the sentence. Please modify this. Please modify the injunction. Common law and criminal law, civil law and criminal law, has always had post-judgment mechanisms to be able to rectify problems that arise subsequently. Those do not exist under California bar proceedings, and it's unique to that. But, again, it's not the only deficiency. We've let you go quite a bit over your time, so I wanted to see if Judge Tishima or Judge Siler have further questions for you. No, thank you. Okay. Mr. Siler, I want to thank you for your argument this morning. Thank both counsel. These matters are submitted.
judges: Siler, TASHIMA, BRESS